The next case on calendar is United States v. Mitchell, 25-1795. Each side will have 15 minutes. Stephanie Bond May it please the Court, my name is Stephanie Bond. I represent the appellant in this case. I am hoping to reserve two minutes for rebuttal. The District Court erred when it decided that a vehicle, even without evidence that it was used in the interstate system, sufficiently satisfied the use of the instrumentality of interstate commerce element of the offense. In reaching this conclusion, the District Court misinterpreted and misapplied this Court's holding in United States v. Stackhouse. In Stackhouse, which was a phone wasn't it? Yes, a phone and more importantly in my case, given the facts of my case, that the victims were traveled across state line. So in Stackhouse it was both. They said that first of all the victims crossed state line in a vehicle and the defendants used cell phones in furtherance of the offense. So they found two different instrumentalities that were used in furtherance of the offense. In my case, in Mr. Mitchell's case, he did not cross state line. He did not use an interstate to travel. He did not use a cell phone at all, definitely not in furtherance of the offense. The victim herself testified that he did not use a cell phone at all during the time that she was with him. The vehicle in question was not an electric vehicle, is that right? That is correct, Your Honor. It was a gas powered vehicle. It was a private vehicle. I've lived in Arizona all my life. I've had family members in the automobile business. There's no non-electric vehicle manufactured in Arizona. That car had to come from interstate commerce, right? The vehicle. Well, so Judge, we could surmise that, but that's not what the government proved. That's not what the government argued. That's not what the district court considered. That very well might be true. I don't know that for a fact. Well, isn't it judicially noticeable that the parts of a car had to have come from outside of the state? Well, Judge, it might have been judicially noticeable if the government had argued that and they had asked the court and presented the court with some kind of evidence to take judicial notice. So this jurisdictional question, would we figure this out de novo? Is there any reason we can't take judicial notice? Is there any reason it had to have been presented differently originally? Judge, I do believe it has to be presented differently. And the reason why is because it's the facts of the case. We're not asking this court to make a huge, broad decision saying never, ever, ever could a vehicle be an interstate travel. What we're asking this court to say is if an individual uses his own vehicle and he travels only on state roads in a rural area, is that interstate commerce? That's what we're asking the court to decide. And we're asking the court to decide that based on the only case we have that is actually on point is the Tenth Circuit case. Your argument is that this was the government's burden. This impact on interstate commerce is an element of this offense and they didn't step up and prove that. That's correct, Judge. They did not prove it at all, especially during the trial. And this was a twofold because obviously we objected before trial saying that this is not a case that can be a kidnapping case in this federal court. Counsel, in our Stackhouse decision, pointing to the cell phones, did our court focus on the fact that the cell phone had traveled in interstate commerce? Judge, my reading of Stackhouse was it was more that there was a cell phone used, not that it had traveled. And isn't it that the cell phone itself is an instrumentality of the calls across state lines that were bouncing things off of towers that may be other places? And that's my understanding, yes, of the Stackhouse. Okay. So in this case, I want to make sure you seem to be very, I appreciated the care with which you defined that he was using his own car and only on state roads within the borders. So if he had picked up this girl and taken her to a small plane and flown her from the border to Flagstaff, but still well within Arizona, it had been his own plane, do you think that would satisfy the interstate commerce? Well, Judge, there would be an argument that that might satisfy interstate commerce. Even though it's purely interstate and it was his vehicle, without consideration as to whether the plane itself was manufactured in Kansas and brought into the state? Well, Judge, I wouldn't suggest that the fact that the plane is, you know, manufactured here, those type of things flown here, I would go based more upon the fact that there is case law and specifically some of the case law that's been cited in our briefs that dealt only with aircrafts. And so I think aircrafts are different because they're up in the sky. If he traveled on Interstate 10, would that make a difference? I think that would make a difference. Even though it was entirely within the state. I think that if he had traveled on the interstate, I think that that would have been an argument that the government could have made. And I think that's something the court could have considered. I personally don't believe that our legislature intended for the government to have the ability to prosecute any crime in which a car is being used. We're talking Congress, right? Correct. And that's really exactly what we're talking about. Obviously, they didn't say this in the kidnapping statute, but they talk about and there's a lot of cases to talk about it for the Commerce Clause. And, you know, specifically, we have a lot of cases about other statutes that dealt with whether a vehicle was or was not an interstate commerce. And what do we do with the statement in Fages versus FAA that says we have held that cars are instrumentalities of interstate commerce? Well, so that was kind of a distinction I made in the brief that the government had said. A car can be an instrument of interstate commerce. But the statement is very blanket. Cars are instrumentalities of interstate commerce. Well, so I guess, Judge, what I would point out to you is I don't believe that that is that broad. I believe that there's always the facts. And that's kind of what the Commerce Clause is about. Are there facts to support the Commerce Clause? So when we're talking about an instrumentality of interstate commerce, isn't that something that carries commerce? I mean, would your client need to have us believe that he didn't carry groceries that came from outside the state in the car and so it was an instrumentality of interstate commerce? He didn't carry anything else that ever came from outside the state as part of commerce? So, Your Honor, the argument that you are asserting is essentially exactly what the Supreme Court and the court in Cheveria disagreed with. Specifically, they had said, and this is what I'm quoting from United States v. Lopez, which was Supreme Court in 1995, that to transform any crime that uses a vehicle into a federal matter allows the government to regulate everything that moves. And that is basically what the court is proposing in that, is that anything that moves, anytime a car moves, anytime a car is used, that implicates the government being able to prosecute a case. And that is not what we have said. And specifically, I would take the court all the way back to 1824 in Gibbons v. Ogden, where the Supreme Court said that the broad classification of all vehicles as an instrumentality of interstate commerce is rejected. That that is not, just the broad classification, that is not what interstate commerce is. And that was the way that I read the Tenth Circuit's case. It just said that you can't classify all vehicles as, it didn't say cars, it said vehicles. So it might have, it had in mind perhaps, you know, ATVs, racers, side-by-sides, things like that, that have limited mileage. Or as Judge Hawkins pointed out, you know, we have some questions about the capacity of electric vehicles, especially in large western states. But this was not, this was not any of those things. Correct. And I think that's the reason why this is not something that this court has to get into right now. I mean, this court is making a decision based upon this case, as to the fact that... And if you were writing our opinion, what would we say? I would say that as the car is used in this case, it did not affect interstate commerce. And therefore, it was not a federal matter. You used a different term. Affecting interstate commerce is different from being an instrumentality of Congress. Those are different classifications by the court. Well, and I would agree with you on that, because I think that a car can be an instrumentality, and is in certain circumstances, an instrumentality. I don't think anybody disagrees with that. Again, if I use a car and I cross state line, that is an instrumentality of commerce, right there. I cross state line. Do you have to cross state lines during the commission of the crime? Well, that is one way you could get federal jurisdiction. You could possibly... But would that be necessary to show? Is that the government's burden to show, that during the commission of the crime, that you crossed a state line? In that circumstance, yes, it would be the government's burden. And if it didn't show that the car crossed a state line during the commission of the crime, then it would not satisfy the statute. That is correct. Okay. And then why doesn't the airplane fit the same category? Well, Judge, I think there's differences with the airplanes, because we're talking about airspace. And we're talking about... Yeah, but if it was all Arizona airspace, airspace goes from the land to the heavens. But airspace is regulated by the FCC. It's regulated by the federal government. So I think that in that respect, airspace is different. And that's the reason why I think, yeah, you know what, if he used an interstate, if he had gone on I-10, maybe the court could have said they have jurisdiction because he used an interstate, a federal interstate, in furtherance of this crime with the vehicle. That's pretty narrow, especially when there are state roads that cross international and state borders. So you don't have to be on an interstate to be able to cross a border on a road. Well, and Judge, I personally don't believe that a vehicle, a personal vehicle used, even if it goes on an interstate and does not cross lines, I don't believe they have federal jurisdiction. I'm just saying that based upon what your scenario is, that might be. Maybe. Maybe there's an argument to be made if it was interstate. But there wasn't an interstate in here. And it didn't even cross an interstate. It didn't cross a border. It didn't do any of those kinds of things. And so I'm not asking this court to make a broad, huge decision that, at any point in any time, if a person uses a vehicle intrastate, that means that the Federal Commerce Clause has been satisfied. I'm not asking that. I'm asking the court to say in this circumstance, the fact that it was a personal vehicle, it was a rural road, that was just a state road, that never crossed the state line. How far from the international border were they? Probably about 30 miles, I'm going to guess. Maybe a tad bit less. And how did the victim get from Mexico into Arizona? She walked. She was a student in the United States, but she lived in Mexico. So she actually crossed the interstate border. Did she walk across the border? She did. And then she got picked up by him? She got picked up in the United States. But not 30 miles north of the border? No, she got picked up by him probably five miles from the border. Did she take a bus to get five miles on the border? No, she walked. She walked five miles to this bus stop? Yeah, and Judge, that was a lot of issues that we were talking about during the trial. We found it very weird that she walked there, given that all of her friends that she crossed with took a ride to the school. The school itself was about a block away from where she was picked up. And of course, we, as the defense, we were claiming that this was not what she was trying to make it seem. This was not some kind of independent abduction that happened just out of the blue. Why would whether she walked or took a bus relate to that, though? I'm confused by that. Well, because our contention was that she had planned all along to ditch school that day. And so the fact that she wanted to get rid of her friends- Didn't the jury verdict wash that out? I'm sorry? Didn't the jury verdict wash that argument out? Well, it's hard to say what the jury verdict did and didn't wash out because obviously, Judge, as you've seen, we had so much prosecutorial misconduct in this case, so many things that they heard and considered that they were not supposed to hear and consider that it's a big muddle. I don't know. I don't know if they believed her or if they believed the scientific DNA evidence that was precluded that the government brought in. I don't know if they looked at the badge that the government showed acting like it was Mr. Mitchell's badge because this is a color of law case, so the badge is pretty important. I don't know what they looked at. I just know what their verdict was and how long it took them to make that verdict. You want to save some time for a rebuttal or did you have another question? Sorry, Judge Hawkins, did you have a question? No, I'm fine. Okay, thank you. Good morning, Your Honors. May it please the court, Katie Neff on behalf of the United States. Your Honors, you should affirm the judgments of conviction because the defendant cannot show reversible error or plain error, particularly in light of the lack of prejudice and the overwhelming evidence of guilt. Counsel, did you try this case? I did not, Your Honor. It was tried in the District of Arizona, right? That's correct, Your Honor. Tried in Tucson? That's my understanding. Now, I'm 50 years away from it, but I used to be a prosecutor myself. And before we proceeded in criminal cases, the one thing I always looked at was a listing of the elements of a crime. And would you agree that impact on interstate commerce or the use of instrumentalities of interstate commerce is an element of this crime? I do agree with that, Your Honor. An element the government was required to prove? That's correct, Your Honor. And is your friend on the other side correct that she raised this issue before a jury was impaneled? She did, Your Honor. She filed motions requesting dismissal based on the issues of interstate commerce. But her understanding... So the government was on notice that this would be a substantial part of the defense in this case, that instrumentalities of interstate commerce or impact on interstate commerce were critical? That's correct, Your Honor. What proof did the government offer that instrumentalities of interstate commerce or impact on interstate commerce were apparent in this case? So the prosecution elicited evidence that the defendant used his vehicle to in furtherance of the kidnapping, that he forced the victim under color of law to get into his vehicle and then drove 45 minutes. We understand that. But the instrumentality that we're dealing with here is a car, right? Yes, Your Honor. Okay. On notice that this was an element of the crime, could the government have established that this particular vehicle was in fact an instrumentality of interstate commerce? Well, I think given the case law at the time, cars have been held many times over to be instrumentalities of interstate commerce. My friend is conflating the holdings of United States versus Lopez. The Supreme Court there made very clear that there are three categories. The second category is instrumentality of interstate commerce. And once you have that, you can regulate it completely intrastate activities, as long as you're regulating an instrumentality of interstate commerce. She wants to add a test to that to do a case by case basis. But this court expressly rejected a case by case analysis for once an instrumentality of like when there is an instrumentality of interstate commerce and the circuits that have considered this issue have all resoundedly agreed that cars are instrumentalities as a class. Focusing on this case, did the government at or prior to trial, ask the district court to take judicial notice that the vehicle involved in this awful crime was an instrumentality of interstate commerce? I don't believe that that was that that was specifically asked, but I also don't believe that that was required because there was proof that a vehicle was used. And, you know, going back to this court's opinion in Stackhouse, you know, the defense in that case did try to argue that something more was necessary for fully intrastate activities that were regulated. And this court rejected that didn't get to the question because a cell phone is an instrumentality of interstate commerce. So there wasn't this need to look into, you know, did it cross state borders? Did it have an impact on interstate commerce? Once we know that it's an instrumentality of interstate commerce. And what makes it an instrumentality? Is it because the gas that it uses comes from outside the state? That it carries groceries that come from outside the state? What is the thing that makes it? So in some of the other cases by other circuits, the reasoning is that a channel of interstate commerce is what, you know, where goods can flow easily and where services can be rendered across state lines. But those things that move along those channels are the instrumentality. So the vehicle would be, you know, we know that they're fully capable and very frequently used for interstate travel. And so that's what makes them as a class instrumentalities of interstate commerce. Well, that's interesting because does that mean that if your idea is that cars do move across state lines and that makes them instrumentalities, why wouldn't that require every car to do that to count as an instrumentality? I'm so sorry. I mean, I feel like your argument should be something more like what I was asking. If you're actually saying that a car needs to cross state lines to be an instrumentality of interstate commerce, and the defense is saying this one wasn't actually crossing state lines, it seems like you have a problem with your argument. But if your argument is something more like, no, anything that carries goods in commerce, which is like groceries, gas, everything else, that's enough. It obviously, I mean, I think it had to have been doing that with gas at least. So, but you didn't answer my question that way. Instead, you said this thing about crossing state lines, which they're saying he didn't do. So now why don't you have a problem? So, Your Honor, I think both of those would be strong support for why a vehicle as a class are instrumentalities of interstate commerce. And every circuit, save the Tenth Circuit, every circuit that has looked at this issue has decided that a vehicle are, including this circuit, vehicles as a class are instrumentalities of interstate commerce. And so a case-by-case analysis is not necessary. And it may very well be because of what Your Honor pointed out, that they're used for carrying goods. They're used for carrying, you know, transporting for services for interstate commerce. And so, you know, when you look at all of the circuits and the findings, including most recently, this came after our briefs were submitted, the Eleventh Circuit recently found, regarding this kidnapping statute, that the car or the truck that was used completely intrastate was an instrumentality of interstate commerce. And so, you know, the notion that something more is needed, this court rejected that, and United States v. Lopez has never required that. But I want to get back to some of the other points that counsel raised. You know, the evidence in this case was overwhelming. And I think that that's important to note when you're looking at all of the challenges that she brings. The defendant was a Customs and Border Protection officer who used the power of his position to force a middle school girl into his vehicle, where he then repeatedly raped her. And the victim's account of those attacks are corroborated by a mountain of evidence. She testified that he kept her in his apartment. Excuse me. She testified that he saw her outside of her middle school, forced her into his vehicle, drove her a long distance to his apartment, and then kept her there for hours. That's corroborated by the defendant's own admissions to those facts. She testified that while they were at the apartment, he forced her to drink alcohol. That's corroborated by searches that were found in his phone where he's searching underage drinking. And also the alcohol that she described he served her was also found inside of his bedroom. It's corroborated by the injuries that she sustained from those attacks that, you know, he raped her vaginally and anally. He at times blindfolded her and he at times choked her where she thought she was going to die. And this is all corroborated by searches that are found in his phone. In his phone, he had searches about how to cover up a rape. He had searches about how long you can smother someone before they die. And finally, the forensic evidence found on the victim also strongly corroborate her testimony. She was found to have these injuries, bruising and also a laceration in her vaginal area. She was found to have the presence of sperm in her vaginal area very shortly after these attacks. And the defendant's DNA was matched to DNA found on her underwear. So, you know, I think when you consider the totality of the evidence, all of the evidence, the defendant just simply cannot meet his burden that this court needs to move to the nuclear option of reversal. Does the record tell us whether Mitchell watched her cross the border? The record does tell us that he recognized her at previous times, not with respect to that specific instance, but he did recognize her as a crosser at the port of entry where he worked. And so, you know, even if we were to do a case by case analysis, this has international commerce nexus potentially, which, of course, Congress has the ability to regulate. Unless the court has any questions about any other issues, we would ask that you affirm. Thank you. Thank you. I think we had about a minute left. Your Honor, first, I'd like to point out that I disagree with Apelli that the other circuits found instrumentality. And that is part of the thing that I put in my reply brief, showing that the cases that the government cited trying to make that claim were not true. In fact, the only one that maybe, maybe agrees, and there were facts, obviously, that they crossed state lines, was the Protho case, which was out of the Sixth Circuit. Otherwise, the Tenth Circuit, obviously, I'm sorry, I apologize, the Seventh Circuit had Protho, and that was the one that did cross state lines, although I think the holding, there's an argument that they could say the holding was pretty broad. Um, the Sixth Circuit in Small, and obviously the Tenth Circuit in Chavarrio, have both said that vehicles alone are not instrumentalities. There's got to be something more that happened that interstate commerce was a part of. Why isn't his knowledge that she crossed the border sufficient for interstate commerce? Well, because that had nothing to do with in furtherance of this crime, the fact that she crossed the border. She crossed the border every single day to come to school. It wasn't anything special about this particular day and this particular crime that implicated anything about it. Every day, she crossed the border to come to school. And again, Judge, there's no, there was no evidence that she actually ever intercepted my client at the Border Patrol Station, at the CBP Station. There was quite a bit of evidence, which went to our issue of prejudice, regarding the introduction of the DNA and so forth, that his roommate, who, by the way, was present in the apartment the entire time that the victim was there. Well, I shouldn't say that. I apologize. He was there for about four hours out of the six hours. I get your point. She, he intercepted her multiple times, even on the day of the incident. But that obviously wasn't something the government claimed had anything to do with my client. And I would disagree considerably with the government's portrayal of the evidence in this case. The evidence was not. You've used up your time, so I think I need to cut you off, unless my colleagues have any questions. Thank you both sides for the helpful arguments. Thank you. This case is submitted and we're adjourned.
judges: HAWKINS, BYBEE, FRIEDLAND